UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GARY N. JAMES, Jr.,

        Movant,

  -vs-

UNITED STATES OF AMERICA,

        Respondent.

**DECISION AND ORDER**
**Civil Case**
**No. 1:16-cv-00477-MAT**

**Criminal Case**
**No. 1:07-cr-00139-MAT**

---

## I. Introduction

Represented by counsel, Gary N. James, Jr. ("James") has filed a motion to set aside or correct his sentence under 28 U.S.C. § 2255 ("§ 2255") pursuant to Johnson v. United States, 135 S. Ct. 2551 (2015), and a supplemental § 2255 motion pursuant to United States v. Davis, 139 S. Ct. 2319 (2019).[1] For the reasons discussed below, James's § 2255 motion and supplemental § 2255 motion are denied.

## II. Factual Background and Procedural History

In an Indictment returned on June 20, 2007, James was charged, along with co-defendants Jermaine Ellison ("Ellison") and Alphonso Moody ("Moody"), of violating a number of federal criminal statutes in connection with their armed robbery of a person cooperating with

---

[1] In Johnson, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") is void for vagueness. 135 S. Ct. at 2558-59. In Davis, the Supreme Court held that the similarly worded residual clause in 18 U.S.C. § 924(c)(3)(B) is also void for vagueness. 139 S. Ct. at 2336.

-1-

federal law enforcement. The victim of the robbery was in possession of $1,500 in government funds intended to be used to purchase a TEC-DC9, 9 mm. caliber semiautomatic pistol from James, Ellison, and Moody. However, they determined that they were going to rob the cooperator of the $1,500 instead of selling him the weapon. The robbery took place on January 11, 2007, in a Wal-Mart parking lot in Niagara Falls. Ellison acted as the driver and lookout, while James and Moody effectuated the robbery. During the course of the robbery, James shot the cooperator in the left leg. Then, while attempting to flee the scene, James fired one shot from the pistol he was carrying, narrowly missing one of the law enforcement officers.

James was named in Counts 1 through 9 of the Indictment; he eventually pleaded guilty to Counts 1, 4, 7, and 9. The instant § 2255 motion challenges Count 9, which charged a violation of 18 U.S.C. § 924(c)(1)(A)(iii) ("§ 924(c)(1)(A)(iii)") as follows:

> On or about the 11th day of January, 2007, in Niagara Falls, New York, in the Western District of New York, the defendant, GARY N. JAMES, Jr., during and in relation to crime<u>s</u> of violence for which he may be prosecuted in a court of the United States, namely, <u>violations of Title 18, United States Code, Sections 111 and 1114 committed in the manner set forth in Counts 7 and 8</u> of this Indictment, <u>the allegations of which are incorporated herein by reference</u>, did knowingly and unlawfully use and carry, and in furtherance of said crime<u>s</u> of violence did knowingly and unlawfully possess, a firearm, to wit, an Iver Johnson Arms, Inc., Model TP22, .22 caliber, semiautomatic pistol, bearing serial number AE73105, and in the course of said carrying, use and possession did discharge said firearm.

Indictment at 10-11 (ECF #18) (emphases supplied).

Count 8 charged a violation of 18 U.S.C. § 111(a) and (b) as follows:

> On or about the 11th day of January, 2007, in Niagara Falls, New York, in the Western District of New York, the defendant, GARY N. JAMES, Jr., did knowingly and unlawfully forcibly assault, resist, oppose, impede, intimidate and interfere with Special Agent Jeffrey Brannigan of United States Immigration and Customs Enforcement and Special Agent Huy Khuu of the Bureau of Alcohol, Tobacco, Firearms and Explosives, while they were engaged in and on account of the performance of their official duties, and in the commission of these acts did use a deadly and dangerous weapon, that is, an Iver Johnson Arms, Inc., Model TP22, .22 caliber, semiautomatic pistol, bearing serial number AE73105.

Indictment at 9-10 (ECF #18).

Finally, Count 7 charged a violation of 18 U.S.C. § 1114 as follows:

> On or about the 11th day of January, 2007, in Niagara Falls, New York, in the Western District of New York, the defendant, GARY N. JAMES, Jr., did willfully and unlawfully attempt to kill, with malice aforethought, Special Agent Jeffrey Brannigan of United States Immigration and Customs Enforcement, while he was engaged in and on account of the performance of his official duties, by discharging a firearm, to wit, an Iver Johnson Arms, Inc., Model TP22, .22 caliber, semiautomatic pistol, bearing serial number AE73105, at Special Agent Jeffrey Brannigan, which acts had the tendency to produce death.

Indictment at 9 (ECF #18).

James entered into a Plea Agreement (ECF #59) dated August 6, 2008, which recited that he was agreeing to plead guilty to Counts 1, 4, 7, and 9 of the Indictment. Count 1 charged a violation of 18 U.S.C. § 2114 (a) and 2, (Assault with Intent to Rob), which

-3-

carries a maximum possible sentence of a term of imprisonment of 25 years and a term of supervised release of 5 years; Count 4, which charges a violation of 18 U.S.C. § 111(a)(1) and (b)(2) (Assault of a Person Assisting an Officer of the United States) and carries a maximum possible sentence of 20 years' imprisonment and a term of supervised release ("SR") of 3 years; Count 7, which charges a violation of 18 U.S.C. § 1114 (Attempted Murder of an Officer of the United States) and carries a maximum possible sentence of 20 years' imprisonment and a 3-year term of SR; and Count 9, which charges a violation of 18 U.S.C. § 924 (c)(1)(A)(iii) (Use and Carrying of a Firearm during or in relation to a Crime of Violence and the unlawful Possession of a Firearm in furtherance of a Crime of Violence) and carries a consecutive, mandatory term of at least 10 years to life in prison plus a 5-year term of SR.

James and the Government "agree[d] to [certain] facts, which form[ed] the basis for the entry of the plea of guilty including relevant conduct," and which included the following:

> d) At approximately 8:00 p.m. [on January 11, 2007,] [James], Moody and Ellison arrived at the Wal-Mart Parking lot, in the vehicle being driven by Ellison. Upon arrival at the Wal-Mart parking lot, [James], Moody and Ellison went to the front of the Wal-Mart. [James] went to the [confidential informant] CI's car and returned with the CI. Ellison had left and entered the Wal-Mart, while Moody had remained and met [James] and the CI. [James] retrieved the above described Tec-9 9 from Ellison's car, and he, Moody and the CI went to and entered the CI's vehicle. While in the vehicle, [James] displayed the Tec-9 to the CI and when the CI produced the money to purchase the firearm, [James] grabbed the CI from behind, pointed the above-described Iver Johnson

-4-

pistol at the CI's head and demanded the money. At this
time Moody forcibly took the money and a cell phone from
the CI. After Moody took the money [James] shot the CI in
the left leg.

e) After shooting the CI, [James] and Moody exited the
vehicle, as ICE agents, ATF agents and Niagara Falls
Police officers converged upon the scene. As [James] was
running from the vehicle, attempting to escape, ICE and
ATF agents, who were wearing clothing emblazoned with the
word "Police" in large letters, exited their vehicles,
yelled words to the effect of "Police" and "Stop, Police"
and began to pursue [James]. [James] at this time turned
and, with a depraved indifference to human life, fired
one shot from the Iver Johnson pistol at the law
enforcement officers who were pursuing him. The bullet
struck the vehicle that the ICE and ATF agents were
exiting, on the front drivers side panel about 3 inches
from Special Agent Jeff Brannigan, who was exiting the
vehicle at the time. The bullet then traveled up and off
the driver's side mirror, again inches from Agent
Brannigan. Agent Huy Khuu, ATF, who was already out of
the vehicle and who had begun to pursue [James], was also
in the line of fire and saw the muzzle flash from
[James]'s pistol and heard the projectile go by him.

f) After his arrest, [James] stated that he[,] Moody and
Ellison intended to rob the CI, that [he] had shot the CI
and that he had shot at the law enforcement officers,
although he claimed not to realize that they were law
enforcement officers at that time. . . .

Plea Agreement at 5-7 (ECF #59).

James pleaded guilty on September 10, 2008, to Counts 1, 4, 7 and 9. See ECF Minute Entry dated 9/10/2008 (unnumbered entry); Transcript of 9/10/2008 Proceedings (ECF #130). On January 19, 2009, James filed a pro se motion to withdraw his plea based on ineffective assistance of trial counsel but subsequently withdrew it.

James was sentenced on June 2, 2009, to 210 months'

-5-

imprisonment on the convictions for Counts 1, 4 and 7, to be served concurrently with each other; 120 months' imprisonment on the convictions for Count 9, to be served consecutively to all sentences, for a total of 330 months' imprisonment. In addition, James was sentenced to 5 years' SR on the convictions for Counts 1 and 9, and 3 years' SR on the convictions for Counts 4 and 7, with all terms to be served concurrently with standard and special conditions. Counts 2, 3, 5, 6 and 8 were dismissed on the Government's motion. See ECF Minute Entry dated 6/02/2009 (unnumbered entry); Judgment (ECF #100).

James filed a pro se § 2255 motion (ECF #104) in April 2011. This was terminated on December 6, 2011, due to James's failure to comply with a scheduling order (ECF #5). See ECF Minute Entry dated 12/06/2011 (unnumbered entry).

Following the Supreme Court's issuance of the Johnson decision, James, through counsel, filed his original § 2255 motion (ECF #120) on June 8, 2016. On November 7, 2019, James filed his supplemental § 2255 motion (ECF #142) based on the Supreme Court's decision in Davis. James contends that his conviction on Count 9 for violating § 924(c)(1)(A)(iii) must be vacated in light of Davis because Count 7 is no longer a crime of violence within the residual clause, § 924(c)(3)(B), and the validity of Count 9 depends solely on the validity of County 7. The Government has filed responses to the motions (ECF ##148, 149) arguing that Count

9 is based on two predicate crimes, Counts 7 and 8, even though James only pleaded guilty to Count 7. Since James makes no argument that Count 8 is not a crime of violence under the elements clause, § 924(c)(3)(A)—which was not disturbed by <u>Davis</u>—the validity of Count 9 is not called into question. In any event, the Government contends, Count 7 is a crime of violence within the elements clause, § 924(c)(A), and therefore can be a predicate felony for Count 9. James has not filed a reply.

**III. Scope of Review Under § 2255**

Section 2255 provides, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court may dismiss a Section 2255 motion without a hearing if the motion and the record "conclusively show[,]" <u>id.</u>, that the movant is not entitled to relief. <u>See</u>, <u>e.g.</u>, <u>Chang v. United States</u>, 250 F.3d 79, 85-86 (2d Cir. 2001) (district court was not required to hold full testimonial hearing before deciding federal prisoner's motion to vacate, set aside or correct sentence based on claim of

ineffective assistance of counsel alleging that counsel prevented him from exercising his right to testify on his own behalf, where prisoner made only general allegation, and record was supplemented by detailed affidavit from trial counsel credibly describing circumstances concerning prisoner's failure to testify).

**IV. Merits of the § 2255 Motions**

   **A. Both Counts 7 and 8 Are Predicate Crimes Underlying Count 9**

James's primary contention is that the only predicate crime underlying Count 9 is Count 7, and that Count 7 is no longer a crime of violence following Davis's invalidation of the residual clause, § 924(c)(3)(B). James's argument depends on the proposition that Count 8 does not qualify as a predicate crime for Count 9 because he did not plead guilty to Count 8.

The Government counters that both Counts 7 and 8 are predicate crimes forming the basis of Count 9, notwithstanding the fact that James did not plead guilty to Count 8. The Government notes that the Second Circuit has "join[ed] the consensus" of its sister circuits in holding that "§ 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." United States v. Leonard Johnson, 779 F.3d 125, 129-30 (2d Cir. 2015) ("Leonard Johnson"); accord, e.g., United States v. Rivera, No. 16-191-cr, 2017 WL 659940, at *3 (2d Cir. Feb. 15, 2017) (summary order) (defendant's

-8-

plea allocution provided factual basis for underlying predicate crime).

James has not addressed the Government's argument based on Leonard Johnson. In that case, the § 2255 petitioner had been convicted, following a jury trial, of (1) unarmed bank robbery, (2) armed bank robbery, and (3) using and carrying a firearm during and in connection with a crime of violence—the bank robbery—in violation of § 924(c). In an appeal filed before the § 2255 motion, the Second Circuit had vacated the unarmed bank robbery conviction on the ground of multiplicity with the conviction for armed bank robbery in the same incident. Thus, at the time he filed his § 2255 petition, the only two remaining convictions were for § 924(c) and armed bank robbery. The petitioner argued that the § 924(c) conviction could not stand because, there was no subsisting conviction on the predicate crime of violence following the Circuit's earlier vacatur of the unarmed robbery conviction. Leonard Johnson, 779 F.3d at 126.

The Second Circuit noted that it was called to consider "(1) whether a § 924(c) conviction can be sustained if, notwithstanding legally sufficient proof, the jury acquits on the predicate crime, and (2) whether a § 924(c) conviction requires that the defendant be charged with and convicted of the predicate crime[.]" Leonard Johnson, 779 F.3d at 129 (internal and other citations omitted; footnote omitted). Noting an arguable circuit split the first

question, the Second Circuit did not need to consider it because the jury found beyond a reasonable doubt that the defendant committed both bank robbery and armed bank robbery. Id. (citations omitted).

As to the second question, which is directly relevant to James's case, the Second Circuit concluded that

> [t]he plain language of § 924(c) requires only that the predicate crime of violence (or drug trafficking) have been committed; the wording does not suggest that the defendant must be separately charged with that predicate crime and be convicted of it.

779 F.3d at 129-30 (citing 18 U.S.C. § 924(c)(1)(A) ("[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall [be subject to criminal penalties].")). The Second Circuit observed that "[e]very circuit court to have considered the issue has concluded that § 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." Id. at 129 (collecting circuit cases). In regard to Leonard Johnson's case, there was legally sufficient proof that he committed the unarmed bank robbery—the specified predicate crime—because the jury returned a guilty verdict on that count. In other words, the Second Circuit's earlier vacatur of

that conviction on grounds unrelated to evidentiary sufficiency did not undermine the § 924(c)(1) conviction premised upon it. Id. at 129-30.

In Forman v. United States, No. 15 CR. 237 (PAC), 2017 WL 1434477, at *2 (S.D.N.Y. Apr. 20, 2017), the district court applied Leonard Johnson to a § 2255 petitioner who had been charged in a two-count indictment with (1) Hobbs Act robbery of a videogame store in violation of 18 U.S.C. § 1951, and (2) using and brandishing a firearm in furtherance of that Hobbs Act robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Forman pleaded guilty only to the count charging a violation of § 924(c)(1)(A)(ii). In his § 2255 petition, Forman argued, among other things, that § 924(c) conviction must be vacated because he did not also plead guilty to a predicate crime—the Hobbs Act robbery charged in count one of the indictment. Forman, 2017 WL 1434477, at *2. The district court held that this argument was "foreclosed" by the Second Circuit's Leonard Johnson decision, id., because "there was legally sufficient proof that Forman committed Hobbs Act robbery" inasmuch as "he admitted during his plea allocution that he 'possessed and brandished a handgun while forcibly stealing property from a retail video game store.'" id. (quotation to record omitted; citing United States v. Rivera, No. 16-191-cr, 2017 WL 659940, at *3 (2d Cir. Feb. 15, 2017) (summary order) (defendant's plea allocution provided factual basis for

underlying predicate crime)) see also Larode v. United States, 356 F. Supp.3d 561, 567–68 (E.D. Va. 2019) (charges of assault on, and attempted murder of, a federal officer under 18 U.S.C. § 111, which were dismissed as part of § 2255 petitioner's plea agreement, could still serve as predicate offenses supporting his conviction for using a firearm during a crime of violence in violation of § 924(c); what mattered were the facts to which he stipulated in entering his plea and what predicate offenses he committed based on those facts) (citing United States v. Nelson, 27 F.3d 199, 200-01 (6th Cir. 1994) ("[W]hile it is necessary for the government to present proof of the underlying crime to convict under § 924(c), a defendant need not be convicted or even charged with the underlying crime to be convicted under § 924(c)."); other citation omitted).

Here, at the beginning of the plea proceeding, the assistant United States attorney ("AUSA") summarized the four charges to which James would be pleading guilt. He explained Count 9 as "a violation of 18 U.S.C. Section 924(c)(1) which is the using and carrying of a firearm during or in relation to a crime of violence in this case, the assault on both -- the attempted murder both of Agent Brannigan [as charged in Count 7] and the shot fired in Count Number 8[,] which he is not pleading guilty to[,] at Special Agent Khuu of ATF." Transcript of 9/10/08 Plea Proceeding ("Plea

Tr.") at 5:13-18 (ECF #130) (emphasis supplied).[2]

The AUSA then articulated the factual basis, including relevant conduct—on which James and the Government had agreed—for the entry of the guilty plea. Id. at 11:16-15:2 (ECF #130).[3] With particular regard to Count 9, the AUSA explained as follows:

> The defendant at this time turned and with depraved indifference to human life fired one shot from the Iver Johnson pistol at the law enforcement officers who were pursuing him. The bullet struck a vehicle that ICE and ATF agents were exiting on the front driver's side panel about three inches from Special Agent Jeff Brannigan who was then exiting the vehicle. The bullet then travelled up and off the driver's side mirror again inches from Jeff -- from Agent Brannigan. Agent Hui Khuu, H-U-I; K-H-U-U of the ATF who is already out of the vehicle and who had begun to pursue the defendant was also in the line of fire and saw the muzzle flash from the defendant's pistol and heard the projectile go by him.

Plea Tr. at 14:16-15:2. The AUSA thus clearly referenced the conduct charged in both Count 7 (the attempt to kill a federal agent based on the shot fired at Special Agent Brannigan) and Count 8 (the forcible assault of federal agents based on the shot fired by James at Special Agent Brannigan that also nearly hit Special Agent Khuu). The AUSA proceeded to set forth a summary of the Government's proof regarding these allegations, including the

---

[2] Incidentally, James's defense counsel, when asked by the Court (Arcara, D.J.), stated that were no reason to go through any further explanation of the charges, that he had fully reviewed the terms of the Plea Agreement with James, and that James understood them. Id. at 6:1-8 (ECF #130). James affirmatively stated that he had "[n]o complaints" about the advice he had received. Id. at 6:20-24 (ECF #130).

[3] As noted in the Factual Background and Procedural History section of this Decision and Order, all of these factual allegations had been set forth with the same level of detail in the Plea Agreements. See Plea Agreement (ECF #59).

-13-

proposed testimony by Special Agents Brannigan and Khuu about the shot fired in their direction:

> Agent Brannigan would testify that [the bullet] struck the panel of the car right by the rearview mirror roughly three inches from where he was, traveled up and past his head, again, roughly a matter of inches.
>
> Agent Hui Khuu of the ATF would testify that he had already been out of the car and had begun the pursuit when he saw the defendant turn, Agent Khuu would say he saw the muzzle flash and heard a bullet go by, what he perceived as his head, but obviously he couldn't say his head, but he did hear the bullet go by close enough to him to realize that it was a bullet and that he'd been shot at.

Plea Tr. at 17:8-17.

James confirmed that he understood the facts as recited by the AUSA as well as the summary of the evidence. Id. at 15:15-16; 18:10-11 (ECF #130). James then entered guilty pleas as to all four counts (1, 4, 7, and 9), Plea Tr. at 36:16-24. His guilty plea was accepted by the Court (Arcara, D.J.) as "a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense charged." Id. at 37:2-4.

There is no question that .

### B. Count 8 Qualifies as a Crime of Violence Under § 924(c)'s Elements Clause, § 924(c)(3)(A)

The Court now turns to a consideration of whether Count 8 qualifies as a crime of violence under § 924(c)(1)(A), which provides for a sentencing enhancement when a defendant "uses or a carries a firearm" or "possesses a firearm" "in furtherance of" "a

-14-

crime of violence." 18 U.S.C. § 924(c)(1)(A). "For purposes of [Section 924(c)(1)(A)] the term 'crime of violence' means an offense that is a felony that and--

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

18 U.S.C. § 924(c)(3). Subsection (A) of the Section 924(c)(3) is known as the "elements clause," while Subsection (B) is called the "residual clause." Knight v. United States, 936 F.3d 495, 497 (6th Cir. 2019). The Supreme Court recently invalidated the residual clause, § 924(c)(3)(B), as unconstitutionally vague. Davis, 139 S. Ct. at 2336. But an offense still qualifies as a "crime of violence" if it satisfies the elements clause, § 924(c)(3)(A). See, e.g., Knight, 936 F.3d at 497 (holding that assault and robbery of a postal employee under 18 U.S.C. § 2114(a) constituted a "crime of violence" because it satisfied the elements clause of § 924(c)(3)).

Title 18 U.S.C., § 111(a) punishes assaults committed on federal agents by imprisonment up to 8 years as follows:

In general.--Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; . . . shall, where the acts in violation of this section constitute only

-15-

> simple assault, be fined under this title or imprisoned
> not more than one year, or both, and where such acts
> involve physical contact with the victim of that assault
> or the intent to commit another felony, be fined under
> this title or imprisoned not more than 8 years, or both.

18 U.S.C. § 111(a).

Title 18 U.S.C., § 111(b) contains a sentencing enhancement which is triggered upon the occurrence of the following:

> Enhanced penalty.--Whoever, in the commission of any acts
> described in subsection (a), uses a deadly or dangerous
> weapon . . . or inflicts bodily injury, shall be fined
> under this title or imprisoned not more than 20 years, or
> both.

18 U.S.C. § 111(b). Courts have held that § 111 "is plainly divisible," United States v. Taylor, 848 F.3d 476, 492 (1st Cir.), cert. denied, --- U.S. ----, 137 S. Ct. 2255 (2017). Count 8 of the Indictment, by alleging "and in the commission of these acts did use a deadly and dangerous weapon, that is, an Iver Johnson Arms, Inc., Model TP22, .22 caliber, semiautomatic pistol, bearing serial number AE73105," Indictment at 10 (ECF #18), clearly charged the enhanced offense as set forth in 18 U.S.C. § 111(b).

As the Government observes, James has not suggested that the violation of 18 U.S.C. § 111(b) alleged in Count 8 is not a crime of violence within § 924(c)(3)(A). The Court's research indicates that the circuit courts to have dealt with this issue post-Johnson have held that the enhanced offense of § 111(b) is a crime of violence within the elements (or force) clause of § 924(c)(3)(A), or the similarly-worded 18 U.S.C. § 16(a). See Taylor, 848 F.3d at

492-93 ("In assessing whether the enhanced versions of § 111(b) are crimes of violence, we do not write on a clean slate. In fact, every court we are aware of that has considered the issue has found that it is because the elements of the enhanced offense require the use, attempted use, or threatened use of force capable of causing pain or injury.") (citing United States v. Rafidi, 829 F.3d 437, 445-46 (6th Cir. 2016), cert. denied, 137 S. Ct. 2147 (2017); United States v. Hernandez-Hernandez, 817 F.3d 207, 215 (5th Cir. 2016) (decided under Sentencing Guidelines § 2L1.2); other citations omitted), cert. denied, 137 S. Ct. 2255 (2017); see also United States v. Kendall, 876 F.3d 1264, 1271 (10th Cir. 2017).

The First Circuit in Taylor analyzed the enhanced version of § 111 that involves the use of a "deadly or dangerous weapon," the version with which James was charged. "[A] deadly or dangerous weapon is 'any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person.'" Taylor, 848 F.3d at 493 (quoting United States v. Sanchez, 914 F.2d 1355, 1358 (9th Cir. 1990)). Citing the definition of "physical force" articulated in Johnson v. United States, 559 U.S. 133 (2010) ("Johnson I"), the First Circuit noted that "to be a crime of violence, the crime must require the 'use, attempted use, or threatened use' of 'force capable of causing physical pain or injury to another person.'" Taylor, 848 F.3d at 494 (quoting

Johnson I, 559 U.S. at 140). The First Circuit reasoned that "[a] defendant who acts 'forcibly' using a deadly or dangerous weapon under § 111(b) must have used force by making physical contact with the federal employee, or at least threatened the employee, with an object that, as used, is capable of causing great bodily harm." Id. at 494 (emphasis supplied). Even "'in the absence of physical contact,'" a petitioner "may be convicted of violating § 111 if he engages in 'such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death,' which in combination with the use or brandishing of a deadly weapon is more than enough to satisfy § 924(c)(3)(A)'s requirement of the "threatened use of physical force." Larode, 356 F. Supp.3d at 572 (quoting Rafidi, 829 F.3d at 446).

The Court accordingly joins with those circuit and district courts which have found that § 111(b), one of the predicate offenses underlying James's § 924(c)(3) conviction, qualifies as a crime of violence under the elements clause. Although James did not plead guilty to Count 8 charging a violation of § 111(b), he admitted, in the facts set forth in the Plea Agreement and recited by the AUSA during the plea colloquy, that he fired a deadly weapon in the direction of Special Agent Brannigan, that the shot hit the car about three inches from Special Agent Brannigan and traveled inches past his head, and that Special Agent Khuu heard the bullet go by him. These facts demonstrate that James used a

-18-

deadly weapon to engage in the threat of physical aggression toward the officer so as to inspire fear of pain, bodily harm, or death," which is enough to satisfy § 924(c)(3)(A)'s requirement of the "threatened use of physical force."

In sum, the Court finds that Count 8 charging a violation of §111(b) can serve as a predicate offense for Count 9, and that § 111(b) is a crime of violence under § 924(c)'s elements clause. Since there exists a sufficient predicate for Count 9, the Court need not consider whether Count 7 also constitutes a crime of violence under § 924(c)'s elements clause.

## V. Conclusion

James's § 2255 Motion and Supplemental § 2255 Motion are denied for the reasons stated above. The Court declines to grant a certificate of appealability because James has not made a substantial showing of the denial of a constitutional right. The Clerk of Court is directed to close case No. 1:16-cv-00477-MAT.

**SO ORDERED.**

S/ Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: January 8, 2020
Rochester, New York