UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                        Plaintiff,

      v.

GARY N. JAMES, JR.,

                        Defendant.

                                       **DECISION AND ORDER**
                                          7-CR-139-RJA

      Defendant Gary N. James, Jr. has filed a second *pro se* motion (Dkt. No. 169) to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),[1] seeking a reduction of his 330-month (27 ½ years) sentence to either time served or 228 months (19 years). The Government filed a response (Dkt. No. 171) in opposition, and Defendant filed reply papers (Dkt. No. 173). The Court has also considered Defendant's supplemental filings (Dkt. Nos. 174, 180), Court-ordered supplemental briefing by the Government (Dkt. Nos. 181, 183), and Defendant's additional submissions (Dkt. Nos. 185, 186). For the following reasons, Defendant's motion for a sentence reduction under the compassionate release statute is GRANTED IN PART, and his sentence is reduced to an aggregate 308 months (25 ⅔ years).

---

[1] The Court denied Defendant's first motion (Dkt. No. 157) for compassionate release in a comprehensive text order (Dkt. No. 163). That motion was based on Defendant's alleged high-risk medical conditions with respect to the virus that causes COVID-19, as well as his conditions of confinement while being housed during the pandemic. Defendant filed a notice of appeal (Dkt. No. 164) of that text order, and his appeal was subsequently dismissed by the Second Circuit (*see* Dkt. No. 168).

## BACKGROUND

On September 10, 2008, Defendant pleaded guilty to four counts of the Indictment charging him with violating 18 U.S.C. §§ 2114(a) and (2) (assault with intent to rob) (Count 1); 18 U.S.C. §§ 111(a)(1), 111(b), and 2 (assault of a person assisting an Officer of the United States) (Count 4); 18 U.S.C. § 1114 (attempted murder of an Officer of the United States) (Count 7); and 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (use of a firearm in relation to a crime of violence) (Count 9). The conduct underlying Defendant's guilty plea was that during an under-surveillance gun deal, he robbed and shot a confidential informant in the leg, and while attempting to flee the scene, he shot in the direction of the surveillance van, narrowly missing a special agent.

In their plea agreement, the parties calculated Defendant's Criminal History Category ("CHC") as IV, and a Total Offense Level ("TOL") of 32 for Counts 1, 4, and 7, which would result in a U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of imprisonment of 168 to 210 months on those three counts.[2] The aggregate Guidelines range as calculated by the parties, then, was 288 to 330 months, which accounted for the 10-year consecutive term that was mandatory for Count 9, the § 924(c) count.

When the Presentence Investigation Report ("PSR") was prepared, it calculated a CHC VI, as opposed to the CHC IV the parties contemplated in the plea agreement. The U.S. Probation Office noted that Defendant's CHC would otherwise

---

[2] Count 1 carried a maximum of 25 years' imprisonment, and the maximum term for each of Counts 4 and 7 was 20 years.

be V based on the 10 criminal history points he had from prior convictions, but because Defendant qualified as a career offender his CHC was VI.  *See* Dkt. No. 98 (PSR), ¶ 60.  This career offender designation was based upon Defendant's prior New York State convictions for Burglary in the Second Degree and Criminal Possession of a Controlled Substance in the Third Degree.[3]  *See* Dkt. No. 98 (PSR), ¶¶ 54, 59.  As calculated by Probation, the advisory Guidelines range on Counts 1, 4, and 7, then, with a TOL 32 and a CHC VI, was 210 to 262 months, and accounting for the mandatory 10-year consecutive term of imprisonment on Count 9, the total aggregate imprisonment range Defendant was facing was determined to be 330 to 382 months.  *See* Dkt. No. 98, ¶ 63.

On June 2, 2009, this Court sentenced Defendant to 210 months on Counts 1, 4, and 7, to be served concurrently, and 120 months on Count 9, to be served consecutively to all other counts, for an aggregate term of imprisonment of 330 months.  Dkt. No. 100 (Judgment).  This sentence was at the low end of the Guidelines range calculated by the Court but also within the range the parties had calculated in their plea agreement: 330 months was the one-month overlap between the two calculated ranges.  The Court explained its reasoning for a 330-month sentence as follows:

> I have imposed a sentence at the low end of the
> guideline range.  Basically all the arguments that you
> raised, [defense counsel], are reasons why I sentenced at
> the low end of the guideline range with the mandatory
> consecutive.  He's unfortunately a 24-year[-]old man with

---

[3] At sentencing, the AUSA explained that the second-degree burglary conviction was a youthful offender adjudication that had not shown up in their records, which is why the parties calculated a CHC IV, only, in the plea agreement.  *See* Dkt. No. 102, pp. 8-9.

> an extensive criminal record.  Shots were fired.  It's a
> miracle that no one was killed.  Someone was shot, hit.
> That certainly is a very aggravating circumstance.  And
> the fact that a bullet almost hit and killed a federal law
> enforcement officer is something that the Court takes very
> seriously.
>
> He has an extensive criminal record which is
> unfortunate for a young man of 24 years of age.  And I
> think that the fact that he has trying to turn his life around
> in a very difficult circumstance is a reason to sentence him
> at the low guideline range.

Dkt. No. 102, p. 12.

Defendant, now 41 years old, is currently incarcerated at Federal Correctional

Institution, Allenwood Medium ("FCI Allenwood"), with a projected release date of

September 7, 2030.[4]

### DISCUSSION

"The First Step Act's 'compassionate release' provision, 18 U.S.C. §

3582(c)(1)(A), provides an exception to the general rule that a court may not modify

a term of imprisonment after it has been imposed." *United States v. Luke*, No. 14-

CR-06089-FPG, 2024 U.S. Dist. LEXIS 72005, *3 (W.D.N.Y. Apr. 19, 2024) (internal

citation omitted), *aff'd*, 24-1141, 2025 U.S. App. LEXIS 5477 (2d Cir. Mar. 10, 2025)

(summary order).  Under this provision, a court may reduce the term of

imprisonment if, "after considering the factors set forth in section 3553(a)," the court

finds that "extraordinary and compelling reasons warrant such a reduction…and that

such a reduction is consistent with applicable policy statements issued by the

---

[4] *See Inmate Locator: Register Number 15348-055*, Federal Bureau of Prisons,
https://www.bop.gov/inmateloc/ (last visited Apr. 10, 2026).

Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i) (alterations omitted); *see United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam).

Preliminarily, "absent waiver or forfeiture by the government" (*Keitt*, 21 F.4th at 71), a defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [hereinafter, 'BOP'] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" (18 U.S.C. § 3582(c)(1)(A)).  The Court previously determined that the Government waived any issue regarding exhaustion of administrative remedies.  *See* Dkt. No. 175 (citing *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021) (per curiam)).  It thus proceeds now to the merits.

It is a defendant's burden to show that he or she is entitled to a sentence reduction under § 18 U.S.C. 3582(c)(1)(A) (*see United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021) (per curiam)), and district courts have "broad discretion" when considering such a motion (*United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022) (per curiam)).  "When considering a § 18 U.S.C. 3582(c)(1)(A) motion, a district court is not bound by a binary choice of immediate release or denial."  *United States v. Orellana-Torres*, 2:10-cr-00074-JMA-18, 2025 U.S. Dist. LEXIS 64182, *2 (E.D.N.Y. Apr. 3, 2025).  Indeed, "compassionate release is a misnomer," as section 3582(c)(1)(A) "in fact speaks of sentence reductions."  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  For example, a district court could "reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place."  *Id.*

**I.**     **Extraordinary and Compelling Circumstances**

Defendant makes three primary arguments why extraordinary and compelling reasons exist to reduce his sentence: (1) Chemung County Court ought to have run a six-year state sentence concurrent to his federal sentence, but this never occurred; (2) he was either misclassified as a career offender or the law resulting in that classification "is no longer applicable"; and (3) he has rehabilitated himself.

A defendant "must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that…a sentence reduction…would not simply constitute second-guessing of the sentence previously imposed." *Keitt*, 21 F.4th at 71. Congress expressly delegated authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Amended Policy Statement U.S.S.G. § 1B1.13 became effective on November 1, 2023, and it sets forth a list of "extraordinary and compelling reasons" that—alone or in combination—would warrant a sentence reduction. It is "well-settled that courts must construe *pro se* submissions liberally to raise the strongest arguments that they suggest[.]" *United States v. Scott*, 04-CR-6102 (CJS), 2024 U.S. Dist. LEXIS 95387, *18 (W.D.N.Y. May 28, 2024). The Court therefore concludes that the relevant reasons raised by Defendant's filings include a change in the law if the defendant received an unusually long sentence and has served 10 years of that term of imprisonment (U.S.S.G. § 1B1.13(b)(6)); and rehabilitation, as long as it is not the only reason (U.S.S.G. § 1B1.13(d)).

6

## A.    Interplay Between Federal and State Sentences

Defendant first argues that the Court should reduce his federal sentence to 19 years' incarceration to account for a six-year state sentence he has yet to serve, so he would serve a total of 25 years in custody.  In other words, Defendant seeks a sentence such that upon the Court granting his requested relief, he could be immediately transferred to New York State custody to begin serving his state sentence.  According to Defendant, the Court "requested" that his federal attorney reach out to his state attorney to effectuate running the two sentences concurrently.  Defendant suggests his former attorney neglected to do so.

The pertinent timeline is as follows.  On September 23, 2005, Defendant possessed a quantity of cocaine in the City of Elmira, New York, and was arrested on that same date.  Dkt. No. 98, ¶ 59.  On November 1, 2006, he pleaded guilty to Criminal Possession of a Controlled Substance in the Third Degree, a Class B felony, in Chemung County Court under Docket No. 2005-326 (hereinafter, "CPCS conviction"), and was apparently released pending sentencing.  Dkt. No. 98, ¶ 59; see Dkt. No. 99 (Defendant's Sentencing Memo), pp. 2-3, 7.  Defendant's conduct for the instant federal offense occurred on January 11, 2007, and he was arrested on that date and taken into custody.  Dkt. No. 98, ¶¶ 1, 13-21.  A couple of months later, on March 19, 2007, Defendant was sentenced in Chemung County Court to six years' incarceration for his CPCS conviction (hereinafter, "CPCS sentence").  Dkt. No. 98, ¶ 59; see Dkt. No. 183-1, p. 3.  On April 23, 2009, an appearance was held in Chemung County Court at which time a County Clerk discussed Defendant being

7

in primary federal custody and the state detainer he or she was placing on him and referenced "coordinat[ing]" with Defendant's federal charges.  Dkt. No. 183-1, p. 3.

Defendant's federal sentence was imposed on June 2, 2009.  During that sentencing proceeding, the following exchange took place about running his federal sentence concurrent to his yet-to-be-served state sentence:

> [DEFENSE ATTORNEY]: Your Honor, one more thing. As the Court knows from my memorandum, [Defendant] is going to serve a six-year state sentence after he finishes the sentence imposed by Your Honor.  We're asking if the Court would direct that your sentence run concurrent to that sentence.  I don't know.
>
> THE COURT: I don't think I can do that.
>
> [AUSA]: I don't know if you can or can't, Judge.
>
> THE COURT: [Probation Officer]?  Federal sentences -- state sentence could be concurrent with federal but I don't think it's reversed.
>
> THE PROBATION OFFICER: The problem here is he's in primary federal custody, Judge.  So, you know, there's – so there's nothing really to make it concurrent or consecutive.
>
> [DEFENSE ATTORNEY]: I understand that, and that's why I asked the Court to consider that in the overall sentence.
>
> THE COURT: Well, I'll leave it up to the [BOP].  I certainly wouldn't be opposed to that because the sentence is certainly very substantial here.  And if it's been determined that somehow or other that -- I don't know exactly how it can be done.
>
> [DEFENSE ATTORNEY]: What may happen, Your Honor, if I may, is his attorney in Chemung County may be able to have him re-sentenced probably to the same sentence based on the transcripts.  If that were to occur

he would then be sentenced after your sentence and that might –

THE COURT: That's fine.

[AUSA]: It strikes me that's the way it has to be, Judge. The government would not be in favor of a concurrent sentence here from the Court.  But that's obviously the Court's discretion.

THE COURT: Well, it's just -- I mean, 30 years is a pretty long time.

[AUSA]: I understand, sir.

THE COURT: I mean, the crime is serious.  In New York State if you kill somebody the maximum is 25 to life.

[AUSA]: I understand. I'm well aware of that.

THE COURT: So it seems to me that the sentence here is more than adequately serves.  And there is some indications [sic] that he is trying to turn his life around, and that's why I sentenced him to the low end.

[AUSA]: I understand that, Judge.  But as I was going to say, I think [the Defense attorney] has hit upon the way to do it.  The correct way to do it would be to have him resentenced in the state.  At that point the state judge could make his sentence concurrent to yours.

THE COURT: That's fine.

Dkt. No. 102 (Sentencing Tr.), pp. 13-15.

In the judgment and commitment order, it was noted that the Court made the following recommendation to the BOP: "The Court has no objection to this sentence being served concurrently to [the] New York State [sentence] imposed in Chemung County, under docket number 2005-326[.]"  Dkt. No. 100, p. 2.  Defendant is now subject to a state detainer as to his CPCS sentence.  *See* Dkt. No. 174, p. 9.

9

Defendant did not reveal in his motion papers that he previously filed a motion in Chemung County Court to vacate his CPCS sentence and to resentence him to a six-year term to run concurrent to his federal sentence.  His motion was predicated on the purported intent of both federal and state courts to run his two sentences concurrent to each other.  According to supplemental documentation provided by the Government, that motion was considered and then rejected in a Decision and Order by Chemung County Court, dated March 22, 2021.  Dkt. No. 183-1, pp. 3-4.  The County Court found that statements by the County Clerk at the Court appearance on April 23, 2009, did not "establish a reasonable probability that the Chemung Court was intending to sentence the defendant to a six[-]year sentence that was to run concurrent with his federal sentence."  Dkt. No. 183-1, p. 4.  It appears that Defendant was aware his motion to set aside his CPCS sentence had been dismissed,[5] but he nevertheless failed to present that information to this Court.

The parties and this Court knew that Defendant would serve his federal sentence first because he was in primary federal custody at the time he was sentenced by this Court, even though he had already been sentenced by Chemung County Court.  "The general rule as to place of incarceration is that regardless of the order in which sentences are imposed, the sentence of the sovereign which has primary jurisdiction over the defendant is served first."  *Shumate v. United States*, 893 F. Supp. 137, 139 (N.D.N.Y. 1995) (citing *In Re Liberatore*, 574 F.2d 78, 89-90 (2d Cir. 1978)); *see United States v. Mendez*, 2025 U.S. Dist. LEXIS 160848, *2-3

---

[5] *See* Dkt. No. 183-1, p. 2 (notification of Decision and Order, dated March 23, 2021, sent to Defendant by Chemung County Court).

(E.D.N.Y. Aug. 19, 2025) (rejecting defendant's argument that because his federal sentence postdated his state sentence, the state court had primary jurisdiction over him); *United States v. Kopp*, 00-CR-189A, 2007 U.S. Dist. LEXIS 43975, *3 (W.D.N.Y. June 18, 2007) ("Here, the defendant has been and is currently in the primary jurisdiction of the federal government…The fact that the defendant was tried, convicted and sentenced by the State of New York first does not change primary jurisdiction.") (citing *Shumate*, 893 F. Supp. at 139).

While this Court could—and did—make a non-binding recommendation to the BOP that the sentences should run concurrent to each other, because Defendant's state sentence would be served second, the state would have jurisdiction over whether his state sentence would run concurrent to his federal sentence.  As the Second Circuit explained:

> 'In our American system of dual sovereignty, each sovereign — whether the Federal Government or a State — is responsible for the administration of its own criminal justice system.' *Setser v. United States*, 132 S. Ct. 1463, 1471, 182 L. Ed. 2d 455 (2012) (quoting *Oregon v. Ice*, 555 U.S. 160, 170, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009)) (internal quotation marks and alterations omitted). Accordingly, when a defendant serves an initial state sentence and a subsequent [ ] federal sentence, the federal district court 'decides whether he will receive credit for the time served in state custody.' *Id.*  Here, we encounter the reverse scenario, where the federal sentence is served first.  In such a case, 'the State will decide whether to give [the defendant] credit against his state sentences without being bound by what the district court . . . said on the matter,' *id.*, although the district court may, of course, make its views known.

*United States v. McIntosh*, 753 F.3d 388, 395 (2d Cir. 2014).

To date, however, New York State authorities have declined Defendant's request to resentence Defendant to a concurrent six-year sentence and have thus not yet given Defendant any credit towards his state sentence for the time he has been in federal custody.  While this Court could have imposed a lower sentence by way of a downward variance under 18 U.S.C. § 3553(a), to account for the six-year sentence Defendant would be serving after his federal sentence was completed, this Court declined to do so.  Instead, this Court sentenced Defendant to a Guidelines sentence of 330 months' imprisonment and simply stated it "wouldn't be opposed" to and would be "fine with" County Court resentencing Defendant so that the state sentence would run concurrent with the federal sentence.  *See*, *e.g.*, *United States v. McKelvey*, Cr. No. 15-61-04, 2023 U.S. Dist. LEXIS 73773, *7-8 (E.D. Pa. Apr. 27, 2023) (noting the sentencing transcript "show[ed] that [the] Court repeatedly acknowledged that the authority to make the concurrent-versus-consecutive decision as to the relationship between the federal and state sentences actually lay with the Pennsylvania state sentencing judge," and it was also apparent the Court used "permissive language only, conditioned on the intentions of the state sentencing court, not imperative language ordering concurrent state and federal sentences").

While suboptimal for Defendant, the above scenario is not extraordinary and compelling, particularly given the separate nature of his state and federal crimes.  It is uncontested that Defendant's CPCS sentence addressed entirely separate conduct than that for which he was sentenced in federal court—again, he violated federal law by robbing and shooting a confidential informant and shooting at federal

agents who pursued him.  "[I]t is far from 'extraordinary' for a prisoner to serve consecutive state and federal sentences…That is particularly the case where, as here, the two sentences involve entirely unrelated conduct occurring on separate dates, with each warranting its own punishment."  *United States v. Rios*, 20 Cr. 673 (JPC), 2025 U.S. Dist. LEXIS 250320, *16 (S.D.N.Y. Dec. 4, 2025).

### B.    Career Offender Status

Next, Defendant asserts that he was either misclassified as a career offender or the law resulting in that classification is no longer applicable.  Defendant posits, therefore, that if he were sentenced today, he would "receive a significantly lower sentence for the same offense."  Dkt. No. 173, p. 1.  The Court agrees that Defendant would no longer qualify as a career offender.

The Guidelines definition of a Career Offender is the same today as it was in 2009, at the time of Defendant's sentencing.  For a defendant to qualify as a "Career Offender" under Guideline § 4B1.1, it is necessary that: "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).

It is undisputed that Defendant satisfies the first two prongs of the career offender analysis.  Defendant argues only that his two prior felony convictions do not satisfy the third prong.  At sentencing, this Court deemed Defendant a career

13

offender based upon his prior New York State conviction for Burglary in the Second Degree and his CPCS conviction.  *See* Dkt. No. 98 (PSR), ¶¶ 54, 59.

### *Second-Degree Burglary Conviction*

Defendant argues that his second-degree burglary conviction, for which he was adjudicated a youthful offender, should not be considered a predicate offense under the Guidelines because it does not qualify as a "prior felony conviction."

A "prior felony conviction," for the purpose of Guideline § 4B1.1(a), is defined as "a prior <u>adult</u> federal or state conviction for an offense punishable by…imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed."  U.S.S.G. § 4B1.2 cmt. n.1 (2007) (emphasis added).[6]  A conviction for an offense committed before the age of eighteen will be deemed an adult conviction "if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted[.]"  *Id.*  The Second Circuit has held that "where…a defendant was tried and convicted in an adult court and served his sentence in an adult prison, his New York State youthful offender adjudication is a predicate conviction under the Career Offender Guideline."  *United States v. Felder*, No. 17-2503, 760 F. App'x 74, 76 (2d Cir. Jan. 24, 2019) (summary order) (citing *United States v. Jones*, 415 F.3d 256, 261 (2d Cir. 2005)).

---

[6] Defendant was sentenced using the 2007 edition of the Guidelines Manual.  Dkt. No. 98, ¶ 28.  In the current 2025 edition, former Guideline § 4B1.2 comment note 1 is located at § 4B1.2(e)(4).

14

Defendant argues a decision from the Eastern District of New York, *United States v. Millington*, 20-CR-288 (LDH), 2022 U.S. Dist. LEXIS 2174 (E.D.N.Y. Jan. 5, 2022), has "a direct impact" on his youthful offender conviction and "its ability to classify [him] as a career offender." Dkt. No. 186, p. 2. Defendant's reliance on *Millington* is misplaced.[7] The district court in that case held that it would not apply a sentencing enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), where the defendant had six prior New York State second-degree burglary convictions that would have "function[ed] as predicate offenses" under the ACCA but "the sentencing court did not advise [d]efendant of his youthful offender eligibility or otherwise make a youthful offender determination." *Id.* at *1, 6. The Eastern District reasoned that it "strain[ed] sensibility to fathom a set of circumstances where an individual, advised of their right, would not have opted to pursue youthful offender status." *Id.* at *6. The Court's conclusion that it would not sentence the defendant pursuant to the ACCA was premised on the Second Circuit's decision in *United States v. Sellers*, 784 F3d 876 (2d Cir. 2015), which held that "a '[youthful offender] adjudication is not a predicate conviction under the ACCA.'" *Millington*, 2022 U.S. Dist. LEXIS 2174, at *3 (quoting *Sellers*, 784 F3d at 887).

More specifically, *Sellers* held that one of the defendant's prior criminal convictions was not one of the three necessary "qualifying predicate conviction[s]" to render him an armed career criminal, *i.e.*, to trigger the fifteen-year mandatory

---

[7] Defendant also cites *United States v. Williams*, 2:15-cr-00069-JDL, 2015 U.S. Dist. LEXIS 150909 (D. Me. Nov. 6, 2015), an out-of-Circuit order on defense motions *in limine* that has nothing to do with sentencing or youthful offender adjudications.

15

minimum sentence under the ACCA, because the conviction was a youthful offender adjudication that vacated his conviction under New York law. *Sellers*, 784 F3d at 879. The Circuit in *Sellers* applied the definition of "crime punishable by imprisonment for a term exceeding one year" in 18 U.S.C. § 921(a)(20)—which excludes certain convictions, including those that have been "set aside"—to "previous convictions" in § 924(e)(1). *Id.* at 882-87; *see United States v. Williams*, 18-cr-657 (ARR), 2019 U.S. Dist. LEXIS 139189, *5 (E.D.N.Y. Aug. 16, 2019) (noting that in *Sellers*, "the Second Circuit looked to New York law to determine whether one of [defendant's] prior convictions had been 'set aside,' as a conviction that has been 'set aside' is not a prior conviction under the ACCA").

The Second Circuit has repeatedly stated that *Sellers*, which addressed the ACCA and not the Guidelines, did not alter how courts should treat prior youthful offender adjudications in applying the Guidelines during sentencing proceedings. *See Felder*, 760 F. App'x at 76 (holding that "*Jones* is binding on this Court") (citing *Jones*, 415 F.3d at 261); *United States v. Cardoza*, No. 15-1602-cr, 639 F. App'x 51, 53 (2d Cir. May 6, 2016) (summary order) ("[Defendant] further argues that our recent decision in *Sellers* alters how courts treat past New York youthful offender adjudications during sentencing proceedings. [Defendant]'s reliance on *Sellers* is misplaced. In *Sellers* we explicitly distinguished between the [ACCA] 'set aside' provision and USSG provisions that 'did not provide that such convictions would be excluded from consideration if state law provided that they be deemed set aside.'") (quoting *Sellers*, 784 F.3d at 885).

As such, Defendant's argument that *Millington*—and by extension, *Sellers*—invalidates his career offender designation is without merit.

Even so, it appears that Defendant's second-degree burglary conviction would no longer serve as a predicate for his career offender designation for a different reason: intervening changes to the Guidelines.  The 2007 version of the Guidelines used when Defendant was sentenced lists "burglary of a dwelling" and offenses falling under a residual clause, which "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another," as predicate "crimes of violence" for purposes of the career offender provision.  U.S.S.G. § 4B1.2(a)(2) (2007).  The current Guidelines' definition of "crime of violence" does not refer to burglary or contain the residual clause.  *See* U.S.S.G. § 4B1.2(a) (2025).  This language was removed from section 4B1.2(a)(2) in 2016, with Amendment 798 to the Guidelines.

As such, Defendant would not qualify as a career offender under today's Guidelines because he would not have the two predicate convictions required for that designation.  *See*, *e.g.*, *United States v. Carlton*, 05 Cr. 796 (PGG), 2022 U.S. Dist. LEXIS 211831, *11 (S.D.N.Y. Nov. 22, 2022) (finding defendant would no longer qualify as a career offender because his 1992 conviction for attempted burglary would no longer fall under the definition of "crime of violence" in the Guidelines).  Amendment 798 does not apply retroactively, however, and therefore this change in the law does not fall under the "unusually long sentence" category of extraordinary and compelling reasons.  *See* U.S.S.G. §1B1.13(b)(6); *United States v. Wilson*, 13-cr-777-3 (LJL), 2025 U.S. Dist. LEXIS 7174, *12 (S.D.N.Y. Jan. 14,

2025) ("Section 1B1.13(b)(6) does not apply when the law that has changed is an amendment to the Guidelines Manual that has not been made retroactive.").  This change in the law also cannot be considered "for purposes of determining whether an extraordinary and compelling reason exists" under section 1B1.13.  U.S.S.G. § 1B1.13(c).  But U.S.S.G. § 1B1.13(c) provides that courts may consider a non-retroactive amendment to the Guidelines in determining the "extent" of a sentencing reduction should Defendant "otherwise establish[ ] that extraordinary and compelling reasons warrant a sentence reduction" under § 1B1.13, which the Court does below.

### CPCS Conviction

Defendant further argues that his CPCS conviction does not qualify as a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.2(b), such that it no longer serves as a predicate for his classification as a career offender.  *See* Dkt. No. 174, p. 1; Dkt. No. 185.  The term "controlled substance offense" is defined by the Guidelines as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits…distribution…or the possession of a controlled substance…with intent to…distribute[.]"  U.S.S.G. § 4B1.2(b).  In *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), the Second Circuit held that "'controlled substance" in § 4B1.2(b) refers "exclusively" to substances listed in the federal Controlled Substances Act ("CSA").  *Id.* at 68.  Thus, according to *Townsend*, a state court conviction can only qualify as a "controlled substance offense" under the Guidelines if the CSA covered the controlled substance or substances also covered by the state statute of conviction.  In other words, "the drug actually involved in [defendant]'s prior conviction is not part of the

18

Court's consideration" because the Court is required to determine whether there is a "categorical match" between the New York State drug schedules and the CSA. *United States v. Swinton*, 495 F. Supp. 3d 197, 204-05 (W.D.N.Y. 2020) (citing *Townsend*, 897 F.3d at 72-74).

In arguing his CPCS conviction is not a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.2(b), Defendant relies upon *United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022), *adhered to on reh'g*, 60 F.4th 720 (2d Cir. 2023) (per curiam), in which the Second Circuit found that "a conviction under N.Y.P.L. § 220.39(1) could not serve as a predicate for the career-offender enhancement because the statute criminalized a broader range of controlled substances than its federal counterpart," and *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023), where the Circuit found "a conviction for the sale of cocaine under N.Y.P.L. § 220.39(1) may not serve as a predicate 'serious drug offense' to enhance a defendant's sentence under the [ACCA]." *United States v. Johnson*, No. 23-7807, 2025 U.S. App. LEXIS 918, *3-4 (2d Cir. Jan. 15, 2025) (summary order).

Defendant was presumably convicted under a different provision of the New York Penal Law than the defendants in *Gibson* and *Minter*.[8]  Nevertheless, because

---

[8] As noted, the defendants in *Gibson* and *Minter* were convicted of N.Y.P.L. § 220.39(1), criminal *sale* of a controlled substance in the third degree, which criminalizes the knowing and unlawful sale of a "narcotic drug."  According to Defendant's PSR, he was convicted of criminal *possession* of a controlled substance in the third degree for his possession of a quantity of cocaine, presumably under N.Y.P.L. § 220.16(1) or (12), which criminalize the knowing and unlawful possession of "a narcotic drug with intent to sell it" (subsection 1); and the knowing and unlawful possession of "one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more" (subsection 12).

New York State law defines "controlled substance" more broadly than federal law, Defendant's CPCS conviction would no longer be considered a controlled substance offense under the Career Offender guidelines.  Moreover, the Government does not deny that *Gibson* would apply if Defendant had been sentenced today, as long as the version of the New York State drug schedule and the version of the CSA on which this Court were to make its comparison are those in effect today, rather than the drug schedules as they existed at the time of Defendant's conviction of the state offense.  *See* Dkt. No. 181, pp. 4-5 ("The current state of federal law (since 2015) indicates that a conviction for [CPCS] in the Third Degree would *no longer serve* as a predicate offense for purposes of determining whether the defendant is a Career Offender.") (emphasis added); *see also Gibson*, 55 F.4th at 165-67 (declining to decide whether district courts should uniformly use a time-of-sentencing approach or a time-of-prior-conviction approach in comparing drug schedules); *see*, *e.g., Lucas v. United States*, 1:17-cv-129-EAW & 1:23-cv-00223-EAW, 2026 U.S. Dist. LEXIS 27569, *11-12 (W.D.N.Y. Feb. 10, 2026) ("Given the Court's determination in *Gibson* that the defendant's New York conviction for third-degree attempted sale of a controlled substance was not categorically a controlled substance offense under the career-offender Guideline, had Petitioner been sentenced today, he would not have been determined to be a career offender, since his 2003 New York conviction for

20

criminal possession of a narcotic drug in the third degree would not have qualified as a controlled substance offense.").[9]

Consequently, Defendant's CPCS conviction would no longer serve as a predicate for the career offender enhancement.

As explained above, Defendant faced a mandatory consecutive sentence of 10 years for the § 924(c)(1)(A)(iii) offense, and a range of 210 to 262 months on the other three counts of conviction. His aggregate range was 330 to 382 months,[10] and this Court sentenced him to 330 months, *i.e.*, the low-end of the calculated range at 210 months, plus 120 months (10 years). If Defendant was sentenced today without the career offender Guideline application, his TOL would remain the same at 32 and his CHC would be reduced to V, resulting in a Guideline imprisonment range of 188 to 235 months on Counts 1, 4, and 7, plus 120 months on Count 9, for an aggregate term of 308 to 355 months. Although the Court's original sentence of 330 months is squarely within that aggregate range, the Court recognizes that if Defendant was

_____

[9] The Court readily disposes with Defendant's position that his CPCS conviction did not qualify as a predicate offense when he was originally sentenced, however. Whether the Court compares the drug schedules as they existed at the time of Defendant's original sentencing in June 2009 or at the time he was convicted of his state offense in November 2006, in both instances, the New York State drug schedules aligned with their federal counterparts. *See Swinton*, 495 F. Supp. 3d at 205 n.12 (noting that because naloxegol was removed from the federal schedules on January 23, 2015, the New York drug schedules since that date are broader than the federal schedules).

[10] When there is a § 924(c) count of conviction and multiple other counts, the career offender calculation is either the greatest of what is reflected in the chart at § 4B1.1(c)(3), in this case, 262 to 327 months since Defendant received a 3-level reduction under § 3E1.1 for acceptance of responsibility, or the otherwise applicable Guideline range with the mandatory minimum term of 120 months for the § 924(c) count added to both ends of that range (*see* U.S.S.G. § 4B1.1(c)(2)(A)&(B)), which results in 330 to 382 months.

21

sentenced today and again received a sentence at the low-end of the Guidelines range (*i.e.*, 308 months rather than 330 months), this amounts to a difference of 22 months in custody.

### C.    Rehabilitation

Defendant also asserts that his rehabilitation while in BOP custody warrants a reduction in his sentence.  He expresses his remorse and regret over his previous criminal activity.  Defendant also provides documentation of the progress he has made during his period of incarceration.  This paperwork notes his "satisfactory adjustment since his arrival" at FCI Allenwood, his completion of the non-residential drug abuse treatment program and the drug education class, and his participation in educational programming.  Defendant has also "excelled" in his positions with the Food Service Department, working his way up to the Officer's Dining Room.  Since he has taken over cooking meals for the facility's officers, "the food has improved, and has been noticed by everybody."  Dkt. No. 174, pp. 6-9 (Progress Report/ Summary Reentry Plan); *see* Dkt. No. 180, pp. 2-5 (duplicate); *see also* Dkt. No. 174, pp. 10-11 (certificates and other evidence of rehabilitation).

As one asserted reason to deny Defendant's motion, the Government highlights Defendant's accrual of 13 "sanctioned incidents" for his conduct while in the BOP, including his most recent violation as of January 2023, which was a September 2019 destruction of property that caused him to lose his job in food service.  The Court tends to agree with Defendant that the Government overstates the seriousness of Defendant's conduct in the BOP, particularly considering the nature of the violations, none of which appear to have involved violent conduct.

Moreover, it is elsewhere stated that Defendant had "maintained clear conduct" after October 9, 2019, and through February 16, 2023, and that "[d]espite the incident reports" Defendant was "not considered to be a management problem," and he continued to work in the Food Service Department as noted above.  Dkt. No. 174, pp. 7-8 ("Discipline Reports" section of Progress Report/ Summary Reentry Plan); *see* Dkt. No. 174, p. 5 (Disciplinary Record).

While rehabilitation is "not, by itself, an extraordinary and compelling reason" for a sentence reduction (U.S.S.G. § 1B1.13(d) (citing 28 U.S.C. § 994(t)), there is evidence suggesting that Defendant has, at least to some extent, demonstrated signs of rehabilitation.

### D.    Combination of Reasons

The Court concludes that, taken together, Defendant has presented extraordinary and compelling reasons for a modest sentence reduction.

"The Sentencing Commission has narrowly circumscribed when a change in the law may constitute an extraordinary and compelling reason for compassionate release."  *United States v. Henoa*, 96-CR-355 (ARR), 2024 U.S. Dist. LEXIS 30739, *10 (E.D.N.Y. Feb. 22, 2024) (citing U.S.S.G. § 1B1.13(b)(6), (c)).  Under the "unusually long sentence" category, U.S.S.G. § 1B1.13(b)(6), Defendant has served well over 10 years of his sentence (*see* Dkt. No. 174, p. 6) and the Court also presumes that he "received an unusually long sentence" of 330 months.  The Court further finds, "after full consideration" of Defendant's "individualized circumstances," including evidence of Defendant's rehabilitation—that is, rehabilitation after his last disciplinary infraction that this Court is aware of, which occurred in September 2019,

23

over six years ago—that the "change in the law" regarding his CPCS conviction and his career offender designation "produce[d] a gross disparity between the sentence being served and the sentence likely to be imposed" when his motion was filed.

Under all of the circumstances of this case, including the additional consecutive sentence that Defendant will be serving in state custody upon the completion of his federal sentence—notwithstanding the parties' agreement in their plea and this Court's recommendation at sentencing that such state sentence be served concurrently— this Court determines that the 22-month difference at the low-end of Defendant's sentencing range constitutes a "gross disparity."  *See*, *e.g.*, *United States v. Monk*, 10-cr-00197 (ER), 2024 U.S. Dist. LEXIS 152672, \*11-12 (S.D.N.Y. Aug. 26, 2024) (finding a five-year difference, where defendant was sentenced to a 20-year mandatory minimum sentence but with the passage of the First Step Act a defendant in his position at the time he filed his motion would instead face a 15-year mandatory minimum, "constitutes a gross disparity"); *United States v. Howard*, No. ELH-13-0629, 2024 U.S. Dist. LEXIS 4914, \*44-48 (D. Md. Jan. 10, 2024) (finding a 21-month difference at the low-end of the recalculated range of imprisonment, where defendant received a career offender enhancement at sentencing but would not have been designated a career offender if sentenced at the time he filed his motion under current Fourth Circuit precedent, to be a "gross disparity"); *United States v. Shaw*, Case No. 5:13-cr-00025, \*9-14 (W.D. Va. July 15, 2021) (finding a 22-month difference when applying the same percent reduction that was used to vary downward at sentencing, considering defendant's "change in career offender status if sentenced today," was a "significant" disparity and thus

24

extraordinary and compelling); *but see Brown v. United States*, 16-CR-297 (AMD), 2025 U.S. Dist. LEXIS 107330, *13-15 (E.D.N.Y. May 30, 2025) (denying defendant's compassionate release motion predicated on *Gibson* and the alleged "disparity between his 'actual sentence and the sentence he would receive if he was sentenced today,'" where defendant's sentence of 168 months was "within the 151 to 188-month Guideline range without the career offender enhancement").

In addition, in weighing the § 3553(a) factors below and determining the appropriate extent of a reduction, the Court has contemplated the fact that not just one, but both, of Defendant's predicates to his career offender designation would no longer support his status as a career offender. In other words, the non-retroactive Guidelines amendment that removes Defendant's second-degree burglary conviction as a predicate offense weighs in favor of a reduction but not a reduction to 228 months (19 years) as Defendant is requesting.

## II.    <u>18 U.S.C. § 3553(a) Factors</u>

Defendant has presented extraordinary and compelling reasons for a modification of his sentence, but the Court must also consider the factors set forth in 18 U.S.C. § 3553(a). Those factors include "the nature and circumstances of the offense"; the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; the need "to afford adequate deterrence to criminal conduct"; and the need "to protect the public from further crimes of the defendant" and "to avoid unwarranted sentencing disparities among defendants with similar records who have

been found guilty of similar conduct."  18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(B),

(a)(2)(C), (a)(6).

It is without question that Defendant committed a serious offense.  In the

Court's denial of Defendant's first motion for compassionate release, it noted:

> The[ ] charges [that Defendant pleaded guilty to] were in connection with Defendant's and his two co-defendants' armed robbery of an individual cooperating with federal law enforcement, in a Wal-Mart parking lot.  The robbery victim was in possession of $1,500 of government funds to use to purchase firearms from Defendant and co-defendant.  In executing their plan to rob the victim of the money instead of selling firearms to him, Defendant displayed a firearm to the victim when the money was displayed, grabbed him from behind, pointed the pistol at his head, and demanded the money.  Co-defendant forcibly took the money and a cell phone from the victim, and Defendant then shot the victim in the leg.  Law enforcement officers converged on the scene of the shooting and as Defendant was running in an attempt to escape, he fired one shot at the law enforcement officers, which narrowly missed one of them. *See* [59] (Plea Agreement), ¶ 5 (Factual Basis); 98 (PSI), ¶¶ 11-21 (Offense Conduct).

Dkt. No. 163.

The Court concluded in 2021 that "the § 3553(a) factors warrant denial of

Defendant's motion, and Defendant presents a danger to the community" (Dkt. No.

163), but Defendant has spent over five additional years incarcerated since the

Court decided that motion, during which he has continued to rehabilitate himself.

Moreover, the fact that Defendant would no longer classify as a career offender if he

were to be sentenced today materially distinguishes this compassionate release

motion from his prior motion.

26

The Court is satisfied that a modest reduction of Defendant's federal sentence, when Defendant has now served by this Court's calculations (absent any good time credit) over 19 years in custody, will "provide just punishment" for his offense conduct, and will not render him likely to pose a danger to any persons or the community.  Indeed, even when Defendant is released from federal custody, he will not be immediately released to the community; upon completion of his federal sentence, he will begin serving his six-year state sentence on his CPCS conviction.

Although Defendant's original sentence of 330 months was appropriate, a modest reduction in sentence now would still promote respect for the law, achieve deterrence, and avoid any unwarranted disparity in sentencing.  Indeed, at Defendant's original sentencing, the Court commented on the fact that while the crime was "serious," in New York State "if you kill somebody the maximum is 25 to life."  The Court also ruminated that there was some indication that Defendant was "trying to turn his life around," which is why he was sentenced at the low-end of the Guidelines range.  Dkt. No. 102, p. 14.

To close the gap between Defendant's sentence and what a similarly situated defendant would face today, and upon consideration of the § 3553(a) factors, the Court reduces Defendant's sentence from an aggregate of 330 months to 308 months, that is, to the low-end of the Guidelines range that would be calculated today without a career offender designation.

## **CONCLUSION**

As set forth herein, Defendant's motion for compassionate release (Dkt. No. 169) is GRANTED IN PART.  Defendant's sentence on each of Counts 1, 4, and 7,

27

is reduced from 210 months to 188 months, to be served concurrently, while Defendant's sentence on Count 9 shall remain unchanged at 120 months of imprisonment to be served consecutively to all other counts, for an aggregate of 308 months' imprisonment.  All other provisions of Defendant's sentence, including all terms and conditions of supervised release imposed by the Judgment (Dkt. No. 100), shall remain in effect.

The U.S. Probation Office shall issue an Amended Judgment.

Defendant's letter motion (Dkt. No. 189) for the Court to either issue a decision on the instant motion or to withdraw his motion is DISMISSED as moot upon issuance of this Decision and Order.

**IT IS SO ORDERED.**

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  April 10, 2026
       Buffalo, New York